# ‚ CUMMINS v. BARKALOW.

### December, 1868.

A dealer in arms agreed to pay an agent, for obtaining from the government an order for the purchase of arms, a share of the profit upon each delivery. *Held*, that subsequent modifications, by the government, of - the terms of the order, did not amount to a new order, so as to release the obligation to pay further compensation for the agent's services.*

---

\* In Howland v. Coffin, 47 *Barb.* 653; S. C., 32 *How. Pr.* 300, it appeared that a broker obtained a government charter for defendants' vessel, on the stipulation that he was to receive a commission on the amount of the charter so long as the vessel should remain in the government service. After a period of service, the rate of the charter money was reduced by government, by an indorsement upon the instrument, and the vessel continued in the service. *Held*, that this change did not affect the identity of the charter, and the broker was entitled to his commission upon the reduced rate as well as to commission upon the previous amount.

In Satterlee v. Jones, 3 *Duer*, 102, plaintiff undertook to obtain a return from the treasury department of duties illegally exacted from defendants, for which he was to receive a share. He made application therefor, and it was denied. *Held*, that the contract was an end, and the fact that, subsequently, defendants, without his advice or co-operation, recovered the duties by suit, did not entitle him to compensation.

In Ogden v. Des Arts, 4 *Duer*, 275, it appears that plaintiff undertook to bring suit against the collector of the port, to establish that certain goods were not chargeable with duties under the tariff; and defendants and other importers signed an agreement to pay him one-third of the sums which should be " recovered " ∘ by them respectively, as a return of duties exacted from them on their importations of such goods. *Held*, that the word " recovered " might be read received, so that plaintiff's claims under the agreement were not confined to a share of duties for which he recovered judgment; nor to those duties that had been exacted before making the agreement, but embraced all that were returned to them in consequence of the judicial determination he undertook to obtain.

Such contract, even if champertous as to moneys recovered by suit, is legal as to those voluntarily repaid in other cases under the force of a judicial determination in one case.

In a similar case, defendants, who had previously employed other parties in the same service, signed a stipulation, employing plaintiff, with a proviso, that it was not to interfere with any other arrangement already made. *Held*, that plaintiff was not entitled to recover the stipulated percentage upon the amount refunded, without reference to the amount paid by defendants to those who were previously employed to prosecute the claim. The v. Spofford, 22 *Barb.* 231.

Cummins *v.* Barkalow.

Such a contract is not necessarily void as against public policy.*

One to whom a contract for payment of money is assigned, in trust for one who had made advances to the assignor, may sue thereon, as trustee of an express trust, under section 113 of the Code.

---

* Compare Tool Company *v.* Norris, 2 *Wall.* 45, where it was held that such a contract is void as against public policy,

In Lyon *v.* Mitchell, 36 *N. Y.* 235, 682, it was held that in employing an agent to sell to government property owned by the employer, reference may be lawfully had to the fact that the agent is of the same political party with those administering the government, and has acquaintance and a good reputation at the place where the sale is to be made. The court of appeals say that this is the rule where the sale is to be made to the government of articles needed by them, and where the commercial principle that the seller desires to obtain a good price, and the buyer desires to buy cheap, is understood by both parties as applying to the case. And the case of an avowed agent for sale, is different from one where there is an interference with legislative action or executive clemency, where the party does not profess to act on commercial principles.

So in Howland *v.* Coffin, cited in the previous note, it was held that a contract by which the owners of a steamship agree to pay a broker a specified commission for obtaining a charter of their vessel from the United States, is not void on the ground that it contravenes public policy. It is not to be presumed that any corruption or improper influences were to be resorted to, or that the undertaking was injuriously to affect or subvert the public interest.

Contracts and obligations given to provide the site, materials, &c., for public buildings, in order to influence the choice of location, (the public officers receiving the same being authorized to choose the location with reference to such donations) are valid and supported by a sufficient consideration. So is a guaranty indorsed on such an obligation before its delivery. Marsh *v.* Chamberlain, 2 *Lans.* 287.

Where an unincorporated railroad company, desiring to control the construction of a sewer about to be made under their track, procured the contract with the city for its construction, in the name of one of their members, which required him to do it within a fixed time, and to remove obstructions from, and facilitate the preservation of the track ; and then the company employed him to do the work, agreeing him to pay him his expenses over the contract price, and and an allowance for his services ; and as the time in which, by his contract, he was bound to complete it, was too short, he agreed with them to do it in the shortest possible time, and also in a manner consistent with their interests, and not to stop the running of the cars,—*Held*, that this agreement with the company was not illegal as against public policy. Dingeldein *v.* Third Avenue R. R. Co., 9 *Bosw.* 79.

It was held in Satterlee *v.* Jones, 3 *Duer*, 102, that an agreement be-

James S. L. Cummins, as trustee of. Annie Halderman, sued William V. Barkalow, in the N. Y. superior court, upon an agreement made by defendant, to compensate John Halderman for obtaining an order or contract from the government for the supply of rifles.

W. V. Barkalow, being desirous to sell arms to the United States government, employed John Halderman to present his proposal at Washington, upon an understanding that Halderman, if successful, was to have one-quarter of the net profits. Halderman obtained from the war department, an order dated November 2, 1861, for 26,000 Enfield rifles. Barkalow thereupon gave him the following agreement:

"NEW YORK, Nov. 12, 1861.

"John Halderman has procured for me an order from the war department, dated Nov. 2, 1861, for twenty-six thousand stand of arms.

"I hereby agree to pay to John Halderman, or his assigns, upon each delivery to the government, one-fourth of the profits realized upon each delivery in cash. The expense of the agent going abroad, not to be counted as part of the cost of the arms. That is, John Halderman, or his assigns, are interested with me, to the amount of one-fourth in this matter. One-fourth being given to the capitalist who furnishes the money for that consideration, and one-half being the share of Kirkpatrick and myself. The net profits will be the difference between the costs, of the arms delivered to Government, and the price received for them.

"W. V. BARKALOW."

Barkalow then accepted the order, by a written communication to the authorities at Washington.

In consequence of the delays in the execution of this order, Barkalow subsequently employed one Kirkpatrick to obtain a

---

tween plaintiff and defendants, by which plaintiff undertook to attempt to procure, from the treasury of the United States, a return of duties which had been illegally exacted from defendants by the collector of the port, for a share of the amount recovered, *he being, at the time of rendering the services, an officer in the custom-house*,—was illegal and void, as implying extortion, leading to abuse, and contrary to public policy.

Compare cases in previous note.

new order, or an extension of the original order. The details of these transactions are stated in the opinion.

On the trial Barkalow and Kirkpatrick gave testimony to the effect that Halderman had treated the order as abandoned in consequence of the delays; and the principal question of fact contested on the trial was whether the renewal of the order was not, in effect, a new order, and Halderman therefore entitled to no share in the profits under it.

The right of plaintiff to sue on this contract was derived by an assignment to him, executed by Halderman, and expressed to be " in trust for my wife, Annie Halderman, to reimburse her money due her for advances made me by Mrs. E. J. Reigars, and given to said Annie Halderman by Mrs. Reigars."

Plaintiff recovered judgment.

*The superior court,* at general term, affirmed the judgment, holding that the invalidity of the contract as against public policy, was not in issue; that the evidence sustained the findings; that the original order was fulfilled; and that any objection to plaintiff's capacity to sue was waived by not demurring.

Defendant appealed.

*James T. Brady,* for defendant, appellant.

*William Allen Butler,* for plaintiff, respondent.

MILLER, J.—This action was brought by the plaintiff as the the assignee of one Halderman, to recover one-fourth of certain profits realized by the defendant upon a contract or order made by the government of the United States, with him, for the delivery of Enfield rifles. It is not denied that Halderman obtained an order from the government for the purchase and delivery of rifles; but it is claimed that no rifles were ever delivered under said order, which was abrogated by the government; that rifles were delivered under another and a new and different order, in which Halderman had no interest, and with which he had no connection.

The agreement between Halderman and the defendant shows, upon its face, that it was based upon the order made the by ordnance department, on November 2, 1861, which was accepted

Cummins *v.* Barkalow.

by the defendant; and unless the rifles were delivered under this order the plaintiff cannot recover. The special term found that the rifles were delivered under and in execution of said order, and the extension and modification of it made by the government, and this finding is abundantly supported by the evidence. It must be conclusive, unless it is entirely without evidence to sustain it. That such is not the case is apparent by a recurrence to the leading facts relating to the order in question.

It appears that the contract between Halderman and the defendant was entered into on November 12, soon after the order was made, and the defendant immediately sent an agent to England to fill the order. The agent returned, being unable to forward the rifles, by reason of the queen's proclamation prohibiting the shipment of arms; and the defendant made another application to the government, stating the facts, and that he had thus been prevented from making the delivery according to the terms of the order, and as the non-fulfillment of the order did not occur in consequence of any fault on his part, asking for a new order. No answer was made was to this application, but soon afterward another application was presented, asking for an extension of the time for delivering under the aforesaid order. The application stated that this was the only change desired, and was granted. After this, a general order was issued by the war department, suspending the execution of all contracts for arms, and a commission on ordnance and ordnance stores was appointed to make investigations in regard to them. The defendant applied to the commission to continue the order, and they reported in favor of receiving eight thousand rifles under the order, and that the defendant had notified the commission, in writing, of his acceptance of this as perfectly satisfactory. The eight thousand rifles were delivered afterward and accepted by the government.

It is very evident, from the facts stated, that the proceedings of the defendant were all predicated upon the original order, which was never at any time abrogated, and which was kept alive and continued in force until the rifles were actually delivered.

The delivery of the rifles was had by virtue of this order

alone, and all that transpired intermediate its date and its final consummation related to carrying into effect that order, and was not in the nature of a new and different order from the one obtained by the plaintiff's assignor. The defense interposed, in my opinion, is not established by the proof, which, at most, shows only an extension or a modification of the contract, as to the time within which it was to be performed, and in no other material or essential part.

It is claimed by the defendant, upon his points, that, if the statements of Kirkpatrick, who was sworn and testified as a witness on the part of the defendant, and was a partner in the contract, were true, Halderman was merely employed to use his influence with the government; and that, if such was the case, the contract was against public policy, and void. It is, perhaps, a sufficient answer to this position to say, that the statements of Kirkpatrick, as a witness, are denied by Halderman, so that there would be a conflict upon this point, in the testimony, which the court alone could determine if deemed important, or if called upon to do so, and which has been disposed of by the findings in the case. It may also be remarked, that the contract was entered into with Halderman after he had procured the order and the services in obtaining it had been rendered, and that there is nothing to show any undue or improper influence exercised in procuring it, or any efforts made by him which were not entirely fair and honest. Nor does his subsequent conduct indicate that he did anything more than to make a presentation of the facts, in obtaining an extension of the time and a modification of the terms, so as to enable the defendant to fulfill the contract.

The transaction appears to have been an open one, and the defendant paid Halderman five hundred dollars on the agreement, thus signifying that it was satisfactory and met his approval. In fact, the contract itself, on its face, contained no such defect. It called for no illegal or improper action on the part of Halderman; it demanded the use of no improper influence; it was a simple promise, in consideration of services previously rendered by Halderman, which were entirely legitimate, to account for a certain share of the profits ultimately realized; it contained within itself no illegal or corrupt element which

stamped it as vicious and incapable of enforcement, and no proof was given to show that it was thus tainted before it was executed.

Independent of these views, which effectually dispose of this branch of the case, it may be added that no such defense was interposed in the answer, and no such question raised upon the trial. No motion was made for a nonsuit or request to dismiss the complaint upon any such ground. Nor is there any finding, or any exception taken, which presents the point. If the defendant had intended to raise any such question, he should, at least, have requested the court below to have made a finding of fact, as to whether or not the services rendered consisted merely of the use of his influence with the government in securing the contract, and whether they were of an improper or unlawful character. The practice is well settled in such cases, and there is an utter failure to comply with it here. Ingersoll *v.* Bostwick, 22 *N. Y.* 425; Grant *v.* Morse, *Id.* 323; Carman *v.* Pultz, 21 *Id.* 547; Lyon *v.* Mitchell, 36 *Id.* 682, 683.

I think that the plaintiff was a trustee of an express trust, within the meaning of the Code, § 113. The assignment of the demand of Halderman against the defendant to the plaintiff was for the benefit of another, and the action was properly brought in the name of the plaintiff.

There is no force in the objection that the assignment was not *bona fide.* There was not a particle of evidence to impeach its good faith; and the testimony shows an ample and full consideration, and an existing indebtedness, which it was entirely proper to secure and satisfy in this manner.

I discover no error in any of the findings to which exceptions have been taken, and am in favor of the affirmance of the judgment, with costs of appeal.

All the judges concurred.

Judgment affirmed, with costs, and five per cent. damages.